UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO: 04-10231-MLW |
| | : | |
| MICHAEL O'NEILL | : | |

### DEFENDANT MICHAEL O'NEILL'S REPLY TO GOVERNMENT'S SUBMISSIONS

1) The entire government case against O'Neill's and his version of events is based solely on Jeffrey Deveau's statements to the FBI and the fact that Deveau was "frisked" by O'Neill at their August 2000 meeting.

2) Deveau cooperated in July because he had much to give. He met with the FBI on many occasions regarding other co-defendants but only once with regard to O'Neill.

3) Deveau was involved with 49 loans beginning in 1998. It is not credible to continue to assert that O'Neill made demands on Deveau. O'Neill worked for CIT for many years before this offense and never made demands on any customers. It is more credible to believe that Deveau made the high participation rate demand on O'Neill. O'Neill's agreement for the kickbacks was totally out of character and had never happened before.
The words "O'Neill pushed through loans" are the words of the FBI agent in writing up his notes. There is no evidence that Deveau used those words that the government continually uses as evidence that O'Neill was the instigator.

4) O'Neill traveled to Boston to give a proffer shortly after he was confronted by the

1

FBI. O'Neill had nothing to give the government because he didn't know anything.

5) The government accuses O'Neill of being inconsistent. Yet, Deveau is held accountable for more than $10million in fraudulent loans and the government insists in its Sentencing Memorandum for Deveau that the court properly score the guidelines before departing for cooperation. The guidelines that Deveau is accountable are 33 – 41 months (Government's Sentencing Memorandum on Deveau and court's guidelines calculations are attached). Those calculations are lower than the guidelines the government now seeks to hold O'Neill accountable for. O'Neill is accountable for far less than $10 million. Deveau's guideline calculations are 6 +15 for loss more than $10million, plus 2 for more than minimal planning, -3 for Acceptance of responsibility = level 20, CHC I for 33 – 41 months. The government now seeks to hold O'Neill accountable for a level 22, CHC I, guideline range of 41 – 51 months. The government is inconsistent in its guideline treatment of these two defendants. Deveau is clearly more culpable than O'Neill, yet the guideline range is less than O'Neill's. The government made no argument at Deveau's sentencing that there were "sophisticated means."

Another perhaps more troubling inconsistency is the government's letter to Attorney Oteri attempting to equate Deveau's culpability with O'Neill's. In his June 8, 2006 letter agreeing that the net loss for O'Neill is $2.8 million, the government states "these loans exclude the first several loans in order to give Deveau [and thereby Mr. O'Neill] a benefit for ostensibly not knowing the nature

2

of the loans at the outset or for preliminary "legitimate" loans." Later in its sentencing memo on Deveau, the government asserts that Deveau has been involved in the offense since 1998, a fact the government well knew when it sought to paint O'Neill with the same brush as Deveau.

Moreover, the defendant notes that Maggio's sentencing memo seeks to equate Maggio with Deveau. This characterize is closer to reality than the government's. Maggio's sentencing memo does not even mention of O'Neill.

a. In the government's haste to aggravate O'Neill's sentence, it has submitted a supplemental memo. It is mistaken on at least two counts. Pg 1(b) At first the government says $2.8 million, now it says it was wrong, it's actually $3.9 million. How can the government make a mistake that is over $1 million? Moreover, a review of the loss chart attached to the Government's sentencing memo for Deveau shows the CIT loss figures from 8/27/99 add up to $2.8 Million, not $3.9 million. (The chart the government submitted to probation contains 11 transactions from 8/27/99, while the chart the government submitted to probation and the court contains only 9 transactions. The two extra transactions are one extra Fenno loan on 1/13/00 for $162,800, and a final loan on 3/23/00 for Deveau Tractor for $525,000. The loan to Deveau tractor was done directly to Deveau Tractor. The defendant did not receive participation and did not know the loan was bogus. Even if the court adds the Fenno loan into the loans that the defendant concedes he should have known

3

were bogus, the final amount the defendant is accountable for is $1.774 million.)

b. Page 2, section 2 (b) of the Government's Supplemental Memorandum refers to Attachment "A" which allegedly shows two records from August 17, 1999 that purport to reflect that CIT increased the loan from $402,000 to $450,000. Again the government is mistaken. The original loan application shows a sales price of $480,000 as shown on the second page of the attachment as "Fast Facts Credit Application." This application is submitted first. It shows a sales tax of $28,000, down payment of $58,000, and a $450,000 loan amount. On the second page (which the government has reversed), the CIT credit department approved the loan with an additional 10% down payment, $48,000 and thus a loan amount of $402,000. The two page attachment is reversed. The government has carried over this error to its loan/loss chart. The correct amount of the loan, ($402,000) is reflected in O'Neill's attachment "A" to his objections.

c. This type of error, as well as other inconsistencies and miscalculations, is another indication that the loss as submitted by the government overstates the seriousness of the offense.

d. The government attempted to contact Deveau after it received O'Neill's version of the offense. Deveau's lawyer wrote back to Attorney Oteri that Deveau had no interest in commenting on Michael's version. (Email attached). There are other indications that Deveau was hostile to

4

government's efforts to aggravate O'Neill's role. See Deveau's remark at the end of the taped interview with O'Neill.

6) The court must resolve the issue of O'Neill's role and what he should be held accountable for. Loss; Sophisticated means; abuse of trust; minor role.

   a) The court should understand that "participation" is not illegal.

   b) The high rate of participation that Deveau asked for, i.e., 1 or 2 % of the loan rate is not the usual participation rate that O'Neill was accustomed to giving. O'Neill had been warned about this high rate before he began dealing with DT.

   c) O'Neill's complicity in accepting kickbacks from Deveau was not illegal. It was unethical and it caused concern to O'Neill that he could lose his job if CIT ever found out.

   d) O'Neill is guilty of assisting Deveau to secure fraudulent loans. His role in the crime consisted of submitting what he knew to be fraudulent down payments. He knew this on some of the loans.
   He did not "push through loans." If he were capable of pushing through loans, then he would not have had so many CIT loans for Deveau rejected.

   e) The overarching conspiracy was fairly sophisticated. However, the court must keep in mind that all specific offense characteristics are applied in the same manner as loss, that is, through the lens of relevant conduct. See 1B1.3. The defendant could not reasonably foresee that there was no collateral attendant to any of CIT loans. Nor could he reasonably foresee that other credit companies were being defrauded for multi-million dollars.

      The overarching conspiracy does not contain the same liability for every defendant. The court must assign loss, SOCs and Chapter three adjustments individually. There is no evidence that O'Neill could reasonably foresee the sophistication of Maggio's and Deveau's machinations.

      f) O'Neill did not abuse a position of trust. His role was to submit documents to CIT, not to verify them. CIT did not accept all the documents. It was CIT's responsibility to do the checking.

7.) The defendant also submits that during the entire wired conversation between Deveau and O'Neill there are no recriminations, no accusations, no admissions of the type the government is trying to put on O'Neill.

          Respectfully submitted,
          By his attorney:

          */s/Joseph S. Oteri*
          Joseph S. Oteri
          Oteri & Lawson, P.C.
          20 Park Plaza, Suite 905
          Boston, MA  02116
          617-227-3700

Date:  October 20, 2006

## CERTIFICATE OF SERVICE

    I, Joseph S. Oteri, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 20, 2006

          */s/Joseph S. Oteri*
          Joseph S. Oteri