186a

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | CR 98-10026 |
| OF AMERICA | ) | Boston, MA |
| | ) | June 16, 2005 |
| v. | ) | |
| | ) | |
| WILLIAM THURSTON | ) | |

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE
SENTENCING HEARING

APPEARANCES:

United States Attorney
by SUSAN WINKLER & JAMES ARNOLD, AUSAs
One Courthouse Way, Boston, MA 02210
for Government

Cooley Godward
by JOSEPH P. RUSSONIELLO, ESQ. &
   MATTHEW D. BROWN, ESQ.
One Maritime Plaza, San Francisco, CA 94111
for Defendant

JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10-Room 5200
Boston, MA 02210
(617)946-2577

[2] THE CLERK:  This is Criminal Matter Number 98-10026, United States versus William Thurston.

Court is in session. You may be seated.

THE COURT:  Good morning. Would counsel please identify themselves for the record.

211a

was the government's view that the probationary sentence was minimally adequate prior to trial to reflect the seriousness of the offense. If the government did not believe these things, it could and should have gone to trial against Isola, particularly because it was going to trial against Thurston anyway.

The government could have insisted on global pleas, when everybody pleads or we go to trial and deal with sentencing at the end. Again, that's not unprecedented. It's precisely what happened in my Ferrara case back in 1991.

The Guidelines were intended to diminish the unwarranted disparity that Congress and the President felt had resulted from decisions made publicly by neutral judges. The Guidelines were not intended to authorize unwarranted disparity created by prosecutors who are not neutral and who do not have to explain their decisions publicly. The Federal Court's Study Commission noted the discretion that prosecutors had back in 1990 and the [34] great shift of discretion from judges to prosecutors that the Guidelines had generated. Numerous commentators have observed and, I think, documented that discretion has not been eliminated by the Guidelines, but it has been shifted, and it is often exercised by prosecutors now rather than by judges. This has been a growing problem over time.

Later today, as I told you yesterday, I will conduct the sentencing, to the extent I can, of two members of La Cosa Nostra, the Mafia. But I'm not going to be able to reliably calculate the Guideline range as the law requires me to, because the government with regard to Frederick Simone and Vincent Gioacchini entered into plea agreements that are in the record in this case saying that the government would not provide evidence of relevant conduct.

2

212a

We've somehow evolved – and I'm going to accept that as reasonable in the unique circumstances of those two cases with which I'm quite familiar – but we've evolved to the point that in a particular case the government may argue that the court has no discretion to ignore relevant conduct or to ignore the true facts and, in another case, when it seems to suit their convenience, keep that real offense sentencing from occurring by agreeing not to present evidence or just not doing it, so [35] the adversary system doesn't work.

Unwarranted disparity is a problem because we strive to administer equal justice under the law. But unwarranted disparity caused by the conduct of the prosecutors greatly injures respect for the law, which is a Section 3553(a)(2) factor. It's there in Section 3553(a)(2)(a).

As the government recognizes and told me yesterday it recognizes, the court can, after Booker, take into account unwarranted disparity between codefendants under Section 3553(a)(6), which, as I said earlier, directs courts to consider "the need to avoid unwarranted disparity among defendants with similar records who have been found guilty of similar conduct."

I recognize that this provision is primarily intended to diminish unwarranted disparity nationally. However, as the cases I cited earlier recognize, there can be cases in which the disparity in sentencing between similarly situated codefendants would be so pronounced that to impose those disparate sentences would injure respect for the law and confidence in the administration of justice.

This is one of those cases. I would say this is what I expect will prove to be one of those rare cases.

3

213a

Isola and Thurston are similarly situated except [36] Mr. Thurston went to trial. And, indeed, the government recognized they were similarly situated. They offered them the exact same plea bargain.

Isola – and, if anything, Isola was more culpable than Thurston, as Judge Harrington found – Isola was charged with a broader conspiracy. To get a plea, the government narrowed the alleged conspiracy to Apol, but this does not alter Isola's real offense conduct. Isola was the prime architect of the scheme and more culpable than Thurston, according to Judge Harrington who tried the case and, as I said, had an opportunity to develop that judgment. I accept that conclusion.

Contrary to what the Court of Appeals seemed to have thought in its decision, Isola did not cooperate with the government. The government made that clear yesterday. In fact, Isola would not even meet with the government before his testimony.

Isola's testimony was consistent with Thurston's. Judge Harrington found that, and the parts of the testimony that I've looked at confirm it. For example, they both testified that adding Ferritin was a local option.

To the extent that the government believes Mr. Thurston committed perjury, Isola did too. But the [37] government has made no effort to prosecute him for perjury.

As I said earlier, Mr. Thurston's statement yesterday was essentially the equivalent of Isola's nolo plea. Mr. Thurston now realizes and acknowledges that what he did was not right and takes responsibility for his mistake. He

214a

only says to me that he did not realize at the time that he was committing a crime.

As I noted, Mr. Thurston was offered the same plea agreement as Isola, and it was foreseeable that he too would have gotten a probationary sentence if he had accepted it.

This is not a case – take a step back. This case is unusual. It may be unique in my experience so far. This isn't a situation where a defendant did not – well, insisted – let me say this again.

This case is unusual, if not unique. This is not a case where the defendant decided to go to trial because he wanted to avoid any jail time. Sometimes somebody will resist a plea agreement that says, you know, you've got to do a year in prison, recognizing that he might get five years in prison if he goes to trial and loses, because he doesn't want to go to prison at all.

This is a case where Mr. Thurston had the opportunity to immediately get a probationary sentence, [38] avoid the uncertainty, anxiety, and expense of trial, and avert the risk of being in the predicament that he's been in for the last several years, facing a prison sentence. In fact, he's already gone to jail.

This is a case – Ms. Winkler you want to listen to this.

MS. WINKLER:   Yes.

THE COURT:   This is a case where Mr. Thurston went to trial because he was a religious man, and he did not believe that he could honestly plead guilty because he sincerely, although erroneously, thought he wasn't guilty.

215a

It's a grave problem when people who believe they're innocent, and may well be innocent, falsely admit to crimes to avert the potential of lengthy sentences. That's part of the problem I've been contending with in the Ferrara case where the government withheld highly exculpatory evidence, causing a defendant to plead guilty to a murder that he probably didn't commit in order to avert a wrongful conviction and a life sentence. But courts should not abet guilty pleas by people who are either not guilty or who cannot honestly admit they're guilty.

The only difference between Isola and Thurston is that Thurston went to trial. It is not [39] unconstitutional for the government to argue that Mr. Thurston should get a five-year sentence. The First Circuit pointed that out in Rodriquez, 162 F 3rd 135 at 153. And at the time of Rodriquez, there was no opportunity for the court to do anything relating to the disparity between codefendants.

The five years that the government has advocated in this case is within the Guideline range. And I know that the Guidelines are based on the Section 3553(a) factors. They seek to implement those factors, and I give presumptive weight to those Guidelines. And I considered what they prescribe seriously in this case.

And as I said yesterday, I think Judge Lynch gave eloquent, accurate expression to how important Medicare fraud is. It's a serious crime. And, frequently, I think both the Guidelines and the government's recommendations are too low in white collar cases. However, the government's plea bargain with Isola and the offer it made to Mr. Thurston of, in effect, a probationary sentence are evidence that even a probationary sentence would adequately

reflect the seriousness of the offense in this case, which occurred between 1988 and 1993, and afford adequate deterrence to others who might contemplate a similar offense.

In this case, the evidence indicates that [40] there's no need for a sentence to serve the purpose of specific deterrence, that is, to send a message to Mr. Thurston. He's led an otherwise exemplary life, that is, an exemplary life except for the crime he committed that brings him to court.

What the First Circuit wrote generally about good works in white collar cases has a lot of resonance for me. It's similar to what I often say. I don't usually succumb to arguments that somebody who's been making money illegally ought to get a lesser sentence because he used some of that money to buy a wing for the church and put his name on it to get some public acclaim. But that's not Mr. Thurston. He's a genuinely kind and generous man, and it's a function of his being a religious person.

As I said at the outset, prior to getting deeply immersed in this, prior to the hearing yesterday, I anticipated that I would give Mr. Thurston more time in custody than Mr. – than Judge Harrington did because of the seriousness of the offense. But after grappling with this and delving into it deeply, I'm now persuaded that more time in custody is neither necessary nor appropriate and, indeed, if I imposed an additional prison sentence, it would actually injure respect for the law and the administration of justice.

[41] The defendant has served six months in confinement, as I understand it, three months in community confinement, three months in home detention as part of

his supervised release. In the unique circumstances of this particular case, this is sufficient to recognize the difference between pleading guilty or entering a nolo plea and conserving limited prosecutorial and judicial resources and going to trial, sufficient to recognize the difference between Isola and Mr. Thurston.

It's also sufficient to send the necessary message of general deterrence. There are other potential white collar criminals out there. And the government reasoned in this case that even a conviction would adequately serve those purposes. But in my experience, the most – and in my opinion, because you can't prove this, the most significant decision in sending a message to potential white collar criminals is the decision whether to send the defendant to prison or jail or not give him any jail time. It's not so much the amount of time, it's whether you go away.

And so I think the sentence that Mr. Thurston received, which involved some jail time and six months of confinement of one sort or another, is minimally adequate to serve the general deterrent requirement of the statute.

[42] If I gave Mr. Thurston a lengthy sentence or, indeed, any additional time, particularly a lengthy sentence, it would send the message to reasonable people that it's just too risky to exercise their right to a trial and that the government could manipulate drastically their sentence, depending on whether they exercised that constitutional right, and that no court could or would moderate that manipulation.

Medicare fraud is, when proven, a serious crime. I have at times expatiated at great length on why that is not a victimless crime. But not everyone charged is guilty or can be proven guilty. We had in this courthouse last year

218a

acquittals in the TAP Pharmaceutical cases which illustrate this. And after those acquittals, my colleague, Judge Woodlock, was compelled to vacate the guilty plea of one defendant who did not go to trial because he realized there was a lack of a factual basis for that guilty plea.

It will promote respect for the law in this case and serve the interest of justice more generally if Mr. Thurston pays a price for going to trial but does not receive a Guideline sentence. And he has paid a price in terms of his liberty, among other things.

Among other things, the sentence being imposed should remind the government of its duty to be consistent [43] in its positions within a particular case and between cases, and of the responsibility that it shares with the court to ensure that there is not unwarranted disparity at sentencing.

I've considered the issue of a fine, which is within the scope of the remand. I've considered the fine statute, Section 3571. I find that the imposition of a fine and a fine within the Guideline range is appropriate. While I don't have updated financials, I have no reason to believe, and it wasn't argued, that Mr. Thurston couldn't pay a fine. I'm imposing a fine of $25,000. This was a financial crime, and there should be a financial penalty. There will be.

Mr. Thurston, please stand.

With regard – let me make sure I understand this correctly. I've looked – let me get the judgment.

My understanding is – you can sit down for just a minute. My understanding is that Mr. Thurston was sentenced by Judge Harrington to three months in custody, 24 months supervised release, the first three months

225a

only thing that went into my analysis. In part – and the sentence I gave was not for the purpose of sending a message to the government. That might be one of the incidental effects. But it is not the purpose. But when we're talking about respect for the law, and we're talking primarily, although not exclusively, about reasonable members of the public, and that's in part what I had in mind, because while there were elected officials representing the members of the public who were sufficiently concerned about unwarranted disparity generated by the decision of judges who are neutral and operating in the open, unwarranted disparity is at least equally objectionable when it's generated by prosecutorial decisions. You should strive for a system that has discretion, that gives different sentences based on relevant differences between defendants and the crimes they commit, but – and I know I could have given a [52] sentence less than five years and longer than the sentence that was imposed – but as I said, for the reasons I tried to describe in detail, I think starting with a serious consideration of the Guidelines, giving them considerable presumptive weight, with the unique circumstances of this case and this man, the sentence that I gave was both reasonable and most appropriate.

Court is in recess.

### [53] CERTIFICATE

I, JUDITH A. TWOMEY, RPR, Official Court Reporter for the United States District Court, District of Massachusetts, do hereby certify that the foregoing transcript, pages 1 through 52 inclusive, was taken by me stenographically and thereafter by me reduced to transcription and is a

226a

true record of the proceedings in the above-entitled matter
to the best of my ability.

JUDITH A. TWOMEY, RPR
Official Court Reporter