UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        :
                                :
                                :
v.                              :    NO: 1:04-CR-10231-006-MLW
                                :
MICHAEL O'NEILL                 :


**DEFENDANT O'NEILL'S MEMORANDUM OF LAW
IN SUPPORT OF HIS OBJECTION TO ANSWER OF
GARNISHEE AND MOTION TO QUASH THE WRIT**

**STATEMENT OF FACTS**:

This matter has been brought before the Court on the Application of the United States of America for the issuance of a Writ of Garnishment of an account owned by the defendant, Michael R. O'Neill, and held by the garnishee, Vanguard Group, in satisfaction of the Order of Judgment that defendant pay restitution as part of his criminal sentence. The Writ was issued on April 23, 2007 and the garnishee filed its Answer on May 11, 2007. The garnishee seems to argue that the fund documents state the funds cannot be alienated and that the fund is governed by Pennsylvania law.

Under Pennsylvania law, any retirement or annuity fund provided for under section 408 of the Internal Revenue Code of 1986 exempt from attachment or execution on a judgment. In addition, the account which the Government seeks to garnish is either co-owned by his wife and/or his wife has an interest in said account which ownership and interest cannot be alienated. Thus, the Writ of Garnishment is improper, and should be quashed.

**LEGAL ARGUMENT:**

In 1996, Congress passed the Mandatory Victims Restitution Act of 1996 ("MVRA"), codified in relevant part at 18 U.S.C.S. §§3663A, 3664, making restitution for particular crimes, including those offenses which involve fraud or deceit, mandatory. If the MVRA applies to a defendant, the court must order restitution to each victim in the full amount of that victim's losses, and the court cannot consider the defendant's economic circumstances in calculating the amount of restitution. However, the defendant's financial circumstances and the needs of his dependents are relevant in determining how the restitution is to be paid. The MVRA provides that in determining how the restitution is to be paid, the Court must consider the financial resources and other assets of the defendant, including whether assets are jointly controlled, as well as his projected earnings and his financial obligations, including his obligations to his dependents. 18 U.S.C.S. § 3664(f)(2).

The MVRA further states that an order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title [18 USCS §§ 3571 et seq. and 3611 et seq.]; or "by all other available and reasonable means." 18 U.S.C.S. § 3664(m)(1)(B).

The government is relying on the provisions of the Federal Debt Collection Procedures Act ("FDCPA"), and specifically on 28 U.S.C. §3205 as the mechanism by which it seeks to enforce the order of restitution against the defendant. Congress enacted the FDCPA to create procedures by which the United States could more efficiently collect its debts without relying on a patchwork of state laws. Restitution is expressly

2

listed as a type of debt for which the FDCPA is an appropriate collection vehicle. See 28 U.S.C. § 3002(3)(B).  United States v. Rostoff, 164 F.3d 63, 69 (1st Cir. 1999).

The provisions of the MVRA addressing enforcement of fines and restitution orders are set forth in 18 U.S.C.S. §3611 through §3615, essentially authorizing the government to collect restitution in the same manner, with all the same powers, that the government collects unpaid taxes under the Internal Revenue Code.  These enforcement provisions explicitly incorporate provisions of the tax code.

Thus, pursuant to the provisions of both the MVRA and FDCPA, the United States may enforce a judgment imposing a fine or restitution in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law, against all property or rights to property of the person fined, in the same manner in which it would attempt to collect unpaid taxes.  Therefore the question becomes to what extent the accounts sought to be garnished constitute property or the right to property of the defendant, Michael R. O'Neill.

In the case of United States v. Verduchi, 434 F.3d 17, 20 (1st Cir. 2006), the court explained that the threshold question in . . . all cases where the Federal Government asserts a [tax] lien is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach," citing, Aquilino v. United States, 363 U.S. 509, 512, 80 S. Ct. 1277, 4 L. Ed. 2d 1365, 1960-2 C.B. 477 (1960). "In answering that question, both federal and state courts must look to state law . . . ." Aquilino, at 512-13. Similarly, the FDCPA, 28 U.S.C.S. § 3001 et seq., provides that co-owned property may be subject to enforcement action only to the extent allowed by the law of the state where the property is located.  28 U.S.C.S.  §3010.  *Cf.,* 18 U.S.C.S.  §3613 which states that a

3

fine or restitution order may be enforced in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law… against all property or rights to property of the person fined in the same manner as the government would enforce a tax lien.

First and foremost, under Pennsylvania law, the account, which according to its own terms is governed by the laws of that Commonwealth, may not be attached at all. In particular, 42 Pa.C.S. § 8124(b)(1)(ix) provides any retirement or annuity fund provided for under section…408…of the Internal Revenue Code of 1986, the appreciation thereon, the income therefrom, the benefits or annuity payable thereunder and transfers and rollovers between such funds are exempt from execution.

In addition, under Pennsylvania law, Mrs. O'Neill has a marital interest in these accounts which likewise may not be alienated. According to Pennsylvania law, "marital property" means all property acquired by either party during the marriage…23 Pa.C.S. § 3501. Furthermore, all real or personal property acquired by either party during the marriage is presumed to be marital property regardless of <u>whether title is held individually or by the parties in some form of co-ownership</u> such as joint tenancy, tenancy in common or tenancy by the entirety. 23 Pa.C.S. § 3501. Consequently, the IRA account, despite being identified as being held only in Mr. O'Neill's name, is the marital property of both Mr. and Mrs. O'Neill. As Mrs. O'Neill is not the judgment debtor, her interest is not subject to attachment.

This is because such property would be considered a tenancy by the entirety. In <u>Wylie v. Zimmer</u>, 98 F.Supp. 298 (E.D.Pa.1951), the court stated as follows:

> When property in Pennsylvania is owned by husband and wife, title is held as tenants by entireties. This estate is separate and distinct from the estates

4

of either spouse and cannot be reached by either spouse's creditors. One of the incidents of tenancy by entireties is the right of survivorship. A judgment creditor of one spouse has a potential lien against property held by entireties, which lien is based upon that spouse's contingent expectancy to survive and to become the sole owner of the property. However, the creditor has no right or claim to that property during the lifetime of the other spouse and has no standing to complain of a conveyance which prevents the property from falling into his grasp.

Even if the court were to apply Massachusetts law, Mrs. O'Neill's interest in the account upon which the government seeks to levy, cannot be attached. Massachusetts law provides as follows:

> The real and personal property of any person shall, upon marriage, remain the separate property of such person, and a married person may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if such person were sole. A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.

ALM GL ch. 209, § 1

The First Circuit has explained, under this Massachusetts law, with respect to tenancies by the entirety created in Massachusetts after February 11, 1980[1], each spouse's interest in and rights as to the whole are protected from compromise by the other. While the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other. Either spouse may convey or encumber his or her own interest, but the interest so conveyed is subject to the continuing rights of the other

---

[1] As for tenancies by the entirety created before this time, the case law is clear that traditional common law principals guide the interpretation of the rights and liabilities of each spouse with respect to such property. See, e.g., <u>Shwachman v. Meagher</u>, 45 Mass. App. Ct. 428 (Mass. App. Ct. 1998)(Massachusetts (perhaps uniquely among American jurisdictions) regards pre-1980 tenancies by the entirety exactly as they were treated at common law, unaffected by the modern statutes designed to ameliorate the rights of married women at common law and to render more flexible and individual the property rights of husband and wife. Neither the husband nor the wife can dispose of any part of such a tenancy without the assent of the other, but the whole must remain to the survivor.)

in the property, such that the interest conveyed would, among other things, be wholly defeasible upon the death of the conveying spouse and survivorship of the other. The property held in a tenancy by the entirety can be attached by the creditors of one spouse. Snyder v. Rockland Trust Co. (In re Snyder), 249 B.R. 40 (Bankr. Fed. App. 2000). Where the property is subject to seizure and execution in satisfaction of a lien on the interest of the debtor spouse, Massachusetts law permits the creditor to reach only the interest of the debtor spouse.  Id.

In United States v. Craft, 535 U.S. 274 (2002), the Supreme Court was faced with the issue of whether entireties property can be attached for the purposes of satisfying a tax lien.  Since the enforcement of restitution orders is collected in the same manner as a tax lien, review of the Craft court's treatment of such property is a critical part of the analysis as to how the Court should enforce this restitution order vis-à-vis the rights and interests of Mrs. O'Neill in the property.

The Craft Court stated that whether a person's interest in a tenancy by the entireties qualifies as "property" for purposes of the federal tax lien statute is a question of federal law since the collection of the tax was a matter of federal law.  The Supreme Court indicated the federal tax lien could attach to property that cannot be unilaterally alienated such as property held as tenants by the entirety.  However, the Supreme Court did look to the state law of Michigan where the property was located to determine what interests the debtor spouse could be said to have.

The Supreme Court found that the state law governing the interest in the particular property at issue gave the debtor spouse certain rights to the property and that those rights constituted "property" within the meaning of federal law, subjecting it to the

6

federal tax lien holding that the broad statutory language authorizing the tax lien reveals that Congress meant to reach every property interest that a taxpayer might have. Following this ruling, other courts have recognized that the same logic would apply to the collection of criminal fines and restitution. See, e.g., In re Kathleen M. Hutchins, Debtor, 306 B.R. 82 (2004).

The Appellate Courts have since been left to interpret how this ruling might apply based on the individual concepts of state property law within their circuits, and have noted that Craft does not elucidate how to value that interest, i.e., the interest of the debtor spouse only, given its component parts under state law. Indeed Craft is understandably silent as to any of the implications of its holding that federal tax liens attach to entireties property, including the IRS' enforcement remedies. The First Circuit has explained that in determining the valuation of interests in tenancy by the entirety, First Circuit courts agree that because the tenancy is a unitary title, each spouse is guaranteed an equal right to the full interest in the property, and thus each interest must be valued at 100%. See, e.g., In re Ryan, 282 B.R. 742, 750 (D.R.I. 2002).

In addition, subsequent to Craft, the IRS released IRS Notice 2003-60 which states, in part, that:

> (2) As a matter of administrative policy, the Service will, under certain circumstances, not apply Craft with respect to certain interests created before Craft, to the detriment of third parties who may have reasonably relied on the belief that state law prevents the attachment of the federal lien.

The IRS, in releasing this notice, recognized the Supreme Court's decision in Craft has consequences in the approximately twenty-six jurisdictions that recognize tenancy by the entirety as a form of property ownership, of which Massachusetts would

7

be included. The notice further provides that the IRS, because of the potential adverse consequences to the non-liable spouse of the taxpayer, the use of lien foreclosure for entireties property subject to the federal tax lien will be determined on a case-by-case basis. Thus, the IRS will not necessarily enforce its rights under Craft in every case. And, the IRS finds that as a general rule, the value of the taxpayer's interest in entireties property would be deemed to be one-half.

Even so, the Notice posits, in question and answer form, how the tax lien will affect entireties property. One such question asks whether the federal tax lien on entireties property will survive the death of the taxpayer. The IRS responds to this question by stating that as is the case with joint tenancy with the right of survivorship, if a taxpayer's interest in entireties property is extinguished by operation of law at the death of the taxpayer, then there is no longer an interest of the taxpayer to which the federal tax lien attaches. When a taxpayer dies, the surviving non-liable spouse takes the property unencumbered by the federal tax lien, suggesting that while a lien attaches, the IRS cannot execute on it until the death of the non-liable spouse as the entire estate would pass to the taxpayer at that time.

Since subsequent cases apply the principles used in the collection of tax liens to the collection of criminal fines and restitution, the IRS notice interpreting Craft is instructive here, and at most, the Government may place only a lien on Mr. O'Neill's interest in the funds, as Mrs. O'Neill would be entitled to the entire proceeds should he pre-decease her.

Furthermore, Mr. O'Neill cannot alienate this account without Mrs. O'Neill's consent, and if they were to divorce, the proceeds would be subject to distribution

8

between the parties. For example, pursuant to Pennsylvania statute 23 Pa.C.S. § 3502 upon the request of either party in an action for divorce or annulment, the court would equitably divide the marital property between the parties in such percentages and in such manner as the court deems just after considering all relevant factors. Those factors include such things as the length of the marriage; the age, health, station, amount and sources of income, vocational skills, contribution as a homemaker, employability, liabilities and needs of each of the parties; the contribution by one party to the education, training or increased earning power of the other party; the opportunity of each party for future acquisitions of capital assets and income; the sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits; and whether the party will be serving as the custodian of any dependent minor children. Id.

Again, even under Massachusetts family law principles, the court would make a similar distribution, where

> Upon divorce or upon a complaint in an action brought at any time after a divorce, whether such a divorce has been adjudged in this commonwealth or another jurisdiction, the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance.

ALM GL ch. 208, § 34

This statute goes on to say, that when dividing up such properties, the court must consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills,

employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage. The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit.  ALM GL ch. 208, § 34.

Consequently this Honorable Court should take such factors into consideration in determining what Mrs. O'Neill's interests in the fund are.  The court cannot garnish or place a lien against the funds in the Vanguard 401(k) held in Mr. O'Neill's name without considering Mrs. O'Neill's interests, or the interests of their three children, especially since all the funds at stake are meant to substitute for income upon retirement.  The Court cannot sacrifice Mrs. O'Neill's future and that of her children by garnishing or placing a lien upon the full amount of these accounts.

This view accords with a recent decision of the Ninth Circuit in which an exhaustive review was given by the Court to exactly what portion if any of a criminal defendant's retirement plan(s) may be forfeit as part of a garnishment procedure under the MVRA to collect restitution.  In <u>United States v. Novak</u>, 476 F.3d 1041 (9th Cir. 2007), the Ninth Circuit held that the criminal restitution enforcement provision of the MVRA allows for the garnishment of retirement benefits covered by ERISA.  However, it also noted that the key question of when a participant's interest in a retirement plan becomes "property" or "a right to property" under the MVRA must still be resolved before the government can reach that interest when enforcing a restitution order.

The Ninth Circuit concluded that garnishment pursuant to MVRA can only require retirement plans immediately to turn over the entire present value of a participant's interest if the participant himself has the right to such proceeds. The Court explained that ERISA only guarantees participants a right to begin receiving payments sixty days after the close of the year in which s/he turns 65, completes ten years of service, or leaves the company, whichever occurs later.  Id.  A plan may provide for payment of accrued benefits in one lump sum although only with the participant's consent when the total payment exceeds $5,000, and in those plans providing an annuity to the employee's surviving spouse, the spouse must also consent to the lump sum payments that exceed $5,000.  Id.

Thus the Court held, following a tax levy analysis, that the government can immediately garnish the corpus of a retirement plan to satisfy an MVRA judgment – rather than merely obtaining post retirement payments that otherwise would have gone to the defendant – if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time.  The Ninth Circuit added that because the government's right is to step into the defendant's shoes, it will not be able unilaterally to cash out a retirement plan when ERISA requires that lump sum payment be made payable only with spousal consent.  The Court noted that this accords with the congressional intent to protect "blameless" dependents.

A copy of the CIT Group Savings Plan, Summary Plan Description, for O'Neill's account is attached hereto as "Exhibit A," and according to this document, the Plan requires that Mr. O'Neill identify his spouse as the 100% beneficiary of the proceeds and provides that final distribution of the funds in excess of $5,000 may require written,

11

notarized consent of the spouse.  Defendant and his spouse are attempting to get the VanGuard 401K Plan.  Consequently, the Plan may restrict the alienation of the funds and it should be incumbent on both financial institutions to provide the Court with Plan documents for review in order to determine Mrs. O'Neill's interests in relation thereto.

Moreover, the MVRA provides that in determining how the restitution is to be paid, the Court must consider the financial resources and other assets of the defendant, including whether assets are jointly controlled, as well as his projected earnings and his financial obligations, including his obligations to his dependents.  18 U.S.C.S. § 3664(f)(2).

Thus, before the Court can enter an order garnishing the total amount of the assets contained in the accounts at issue herein, it must first identify with precision the rights to payment afforded under the plans, taking into account, and making of record, the pertinent terms of the retirement plans.

WHEREFORE, defendant respectfully requests that the notices of garnishment be dismissed with prejudice.

Respectfully submitted,
By his attorneys:

/s/Joseph S. Oteri            /s/Joseph M. Toddy
Joseph S. Oteri               Joseph M. Toddy
Oteri & Lawson, P.C.          Zarwin, Baum, DeVito,
20 Park Plaza, Suite 905      Kaplan, Schaer & Toddy, P.C.
Boston, MA  02116             1515 Market St., Suite 1200
617-227-3700                  Philadelphia, PA 19102

Dated: May 31, 2007

CERTIFICATE OF SERVICE

We, Joseph S. Oteri, and Joseph M. Toddy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 31, 2007.

                                         */s/Joseph S. Oteri*
                                         Joseph S. Oteri

                                         *Joseph M. Toddy*
                                         Joseph M. Toddy